IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 08-cr-00521-JLK-1

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. NANCY A. SITZMAN,

      Defendant.

---

**ORDER ON MOTION TO RECONSIDER SCHEDULING OF CONTEMPT
HEARING BEFORE MAGISTRATE JUDGE**

---

The United States has moved to reconsider this Court's Order setting a factual hearing on whether attorney John Zodrow committed contempt of court [filed January 13, 2009; docket #50]. For the following reasons, the motion is **granted in part and denied in part**.

### Factual Background

To clarify the matters that are of particular concern relevant to the issue of contempt, the Court believes that the following actions are sanctionable through contempt or otherwise pursuant to the inherent power of the Court:

On Friday, November 28, 2008, while Magistrate Judge Shaffer was covering the undersigned's criminal docket, Mr. Zodrow appeared in Court without his client (Ms. Sitzman, the Defendant in this case) and without permission of the Court for her nonappearance for a scheduled arraignment in this Class A misdemeanor case. Magistrate Judge Shaffer stated that he would issue a warrant for Ms. Sitzman's arrest. However, Magistrate Judge Shaffer directed the Clerk's Office to re-schedule the arraignment for the undersigned's 10:00 a.m. criminal

docket on Monday, December 1, 2008. Mr. Zodrow was directed to appear at that time with a properly executed waiver of appearance and, if he did, the warrant would not be executed. Magistrate Judge Shaffer stated that if Mr. Zodrow did "not show up at the appointed time on Monday," the marshal would execute the warrant. Mr. Zodrow demurred, requesting permission to simply obtain a signature and file the document. Magistrate Judge Shaffer specifically denied that request, stating that because Mr. Zodrow did not get it right the first time, he was "coming back." Magistrate Judge Shaffer also stated that the entire procedure (*i.e.*, the arraignment) had to be "on the record, and if you simply file it, it's not on the record." The Criminal Clerk then stated that the arraignment would be held on the record at 10:00 a.m. on Monday, December 1, 2008 before the undersigned. Magistrate Judge Shaffer then directed that "the warrant not be executed pending the 10 o'clock proceeding on December 1st." When questioned whether Mr. Zodrow had anything further on this matter, he replied, "No, Judge." That was the end of the proceeding.

The undersigned had no knowledge of any of this prior to 10:00 a.m. on Monday, December 1, 2008. At that time, this case was called as had been set in open court by Magistrate Judge Shaffer the prior Friday. Assistant United States Attorney Jeremy Sibert was in court at that time. At 10:32 a.m., the Court called the 10:00 a.m. hearing and directed Mr. Sibert to state on the record what his understanding was concerning what was to occur at the hearing. Mr. Sibert stated that Mr. Zodrow had represented, at the November 28 proceeding, that the United States Attorney's Office had agreed to Ms. Sitzman's nonappearance on November 28, but that Mr. Zodrow's representation was untrue. Mr. Sibert provided the Court with an e-mail from November 25, 2008 from the United States Attorney's Office advising Mr. Zodrow of the

government's position, that Ms. Sitzman would have to file a motion to continue, a notice of disposition, or show up in Court on the 28th. The Court then stated that an Order to Show Cause would be issued directing Mr. Zodrow to demonstrate why he should not be held in contempt for making misrepresentations to the Court and for failing to follow a direct order to appear before the undersigned at 10:00 a.m. on Monday, December 1, 2008.

Thereafter, the Court learned that attorney John McBride of Mr. Zodrow's office had come into the undersigned's empty courtroom early in the morning on December 1, 2008. The undersigned's law clerk had answered a call to chambers from someone in the courthouse on the other side of the floor and told him she would meet him in the courtroom, which was a halfway point. Mr. McBride was holding a document and stated that he wanted to file it with the Court (and, of course, neither the undersigned nor his law clerk would have had any idea what had transpired the prior Friday). The undersigned's law clerk stated that a judge's chambers did not accept any documents for filing, and that Mr. McBride should go across the street to the Clerk's Office at the Arraj Courthouse to file any documents. The undersigned had no knowledge of this discussion prior to the 10:00 a.m. hearing later that morning, nor would his law clerk have any reason to bring it to his attention. However, after trying to piece these occurrences together, the Court re-set the arraignment for December 4, 2008.

At the commencement of the hearing on December 4, the Court advised all parties of their obligation of candor to the Court and that the hearing could involve issues of contempt of court. At that time, the undersigned simply wanted an explanation and apology from Mr. Zodrow, going so far as to inform the parties that the undersigned did "not want to make this a bigger deal than it has to be." In the Court's firm opinion, Mr. Zodrow declined the invitation to

3

apologize and accept responsibility and, instead, proceeded to blame numerous others (including the Court) for his failings. These include the following:

<b><u>Specific Areas of Concern</u></b>

**A.     Lack of Candor and/or Misrepresentations Concerning the Government's Position on the Nonappearance of His Client**

Instead of acknowledging that his motion for nonappearance of Ms. Sitzman had misstated the government's position, Mr. Zodrow stated that he simply read the statement from his motion that the government did not oppose the "filing of the motion" for nonappearance (as opposed to the relief requested, which was the nonappearance of his client). When the undersigned explained to Mr. Zodrow that the local rules require counsel to state the opposing counsel's position on the relief requested in the motion, and that opposing counsel's position on the mere mechanical act of filing a motion is irrelevant, Mr. Zodrow insisted that he did nothing wrong. Of course, the major problem with this discussion was that Mr. Murphy, an attorney working with Mr. Zodrow, had had all the conversations with government counsel and had prepared the motion that Mr. Zodrow read in court. Compounding the problem is the fact that Mr. Murphy is not presently in good standing to practice before the United States District Court. Mr. Zodrow proceeded to state simply that "Mr. Murphy prepared the motion for me and I relied upon his statements." Later in the December 4 hearing, the undersigned read from the motion that Mr. Zodrow had filed, and the motion stated that the government did not oppose the *granting* of the motion (which AUSA Jeremy Sibert explicitly denied on the record), so it is clear that this was a misrepresentation to the Court. Mr. Zodrow again put the blame on Mr. Murphy. Mr. Murphy was placed under oath and testified that the government had agreed to the requested relief, although the e-mail produced by the government establishes otherwise. He also

testified that it was he who contacted Mr. McBride on Saturday, November 29 concerning an appearance on December 1, although Mr. Zodrow had previously informed the undersigned that Mr. Zodrow sent Mr. McBride.  Mr. Murphy stated that Mr. Zodrow informed Mr. Murphy to take care of the December 1 hearing, so Mr. Murphy telephoned Mr. McBride and told him to have the document at court by 10:00 a.m. on December 1.  Mr. Murphy accepted responsibility for not telling Mr. McBride about the 10:00 a.m. court appearance, but it is clear to this Court that Mr. Murphy was also not informed about the need for the court appearance.  Nevertheless, Mr. Zodrow stated that the "instruction that I communicated to Mr. McBride and Mr. Murphy" was such that they were to attend the 10:00 o'clock hearing, and even that Mr. Zodrow send Mr. McBride and Mr. Murphy an e-mail to that effect, specifically, that "they cover this hearing and that they were to appear at 10 o'clock."

**B.      Disobeying a Direct Order of the Court to Appear for Arraignment**

When asked why he did not appear on Monday, December 1 as directed by Magistrate Judge Shaffer, Mr. Zodrow stated that he was in Chicago.  He stated that it was another attorney in his office, Mr. McBride, who came to court on that date.  The undersigned called Mr. McBride forward, and Mr. McBride stated that he understood from Mr. Zodrow that "something had to be done in this courtroom before 10 o'clock with respect to the appearance and waiver issue."  The Court directed Mr. Zodrow to explain how this conduct complied with "Judge Shaffer's unequivocal order that you [Mr. Zodrow] appear at 10 o'clock."  Mr. Zodrow then cast blame on the undersigned's law clerk for "misdirect[ing]" Mr. McBride, and had that not occurred, Mr. McBride would have been in court at 10:00 a.m.  The Court believes this is an egregious misstatement, especially because the proceeding set for 10:00 a.m. on Monday,

5

December 1 was *not* the filing of a document, but an *arraignment*. As Magistrate Judge Shaffer had stated, the appearance of Ms. Sitzman would be waived for the arraignment in the event a properly executed waiver was presented, but the arraignment itself still had to be held, and further proceedings had on the criminal case. Furthermore, Mr. McBride had plenty of time to be back in court at 10:00 a.m. if, as Mr. Zodrow stated, Mr. McBride showed up at 9:30 a.m. in the undersigned's courtroom with document in hand.

**C.     Lack of Candor and/or Misrepresentations Concerning His Knowledge on November 28 that He Could Not Be in Court on December 1 Due to a Prior Commitment in Chicago.**

The Court asked Mr. Zodrow whether, at his appearance before Magistrate Judge Shaffer on Friday morning, November 28, 2008 at 11:00 a.m., he knew at that time that the immediate following Monday, December 1, that he would be in Chicago rather than at the arraignment as directed by Magistrate Judge Shaffer. Mr. Zodrow never answered that question. He did state that his flight to Chicago was scheduled prior to November 28. The undersigned again warned Mr. Zodrow that he was creating a bigger problem than he needed to, that "this was a very simple thing, but I think you're treating the whole process a little too loosely." Despite this invitation, at no time did Mr. Zodrow take responsibility for any shortcomings except one: "[I]f there's a shortcoming here, I can tell you what my shortcoming was, Judge. As soon as Mr. Murphy was not admitted [in good standing in federal court], I probably should have called Mr. Sibert and suggest that he communicate with me in the future and then we wouldn't have had these communications problems." This was hardly taking the sort of responsibility for these extended proceedings that the Court was expecting.

Based on the foregoing, the undersigned is concerned that Mr. Zodrow disobeyed a direct

6

order of the Court concerning his appearance at 10:00 a.m. on December 1, 2008; lacked candor with and/or made misrepresentations to Magistrate Judge Shaffer on November 28, 2008; and lacked candor with and/or made misrepresentations to the undersigned on December 4, 2008. These allegations involve potential direct and indirect contempt, criminal in nature. At the time of Mr. Zodrow's actions, Magistrate Judge Shaffer and the undersigned had full jurisdiction to conduct proceedings, and every judge, Magistrate, Bankruptcy, District or other, has the legal authority to address sanctionable conduct that occurs before them.

## Discussion and Analysis

As the government notes, there are different types of contempt. In this instance, the Court is raising the prospect of criminal contempt, because it is contemplating punishing misconduct rather than coercing someone to obey an order of the court.

> [W]hether a contempt is civil or criminal turns on the character and purpose of the sanction involved. Thus, a contempt sanction is considered civil if it is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court.

*In re Lucre Management Group, LLC* 365 F.3d 874, 876 (10th Cir. 2004) (citations omitted). In addition to a potential finding of criminal contempt, the Court has the inherent authority to impose sanctions for misconduct.

> "The court's power to impose appropriate sanctions on attorneys practicing before it 'springs from a different source than does the power to punish for criminal contempt.' " *Kleiner v. First National Bank of Atlanta,* 751 F.2d 1193, 1209 (11th Cir.1985) ["internal citation omitted"]. Although the power of a court to punish for contempt may be "inherent," *see Ex Parte Robinson,* 86 U.S. (19 Wall.) 505, 510, 22 L.Ed. 205 (1873), the power of a United States court today to impose criminal penalties for contempt of court is provided by criminal statutes. *See* 18 U.S.C. §§ 401, 402.

7

*Mackler Productions, Inc. v. Cohen*, 146 F.3d 126, 129 (2d Cir. 1998). *See F.J. Hanshaw Enterprises, Inc. v. Emerald River Development, Inc.*, 244 F.3d 1128, 1139 (9th Cir. 2001) (noting the similarities between sanctions imposed by a court and a finding of criminal contempt). If the Court were to proceed either by criminal contempt or its inherent authority to sanction misconduct, procedural safeguards are important, as the government notes. One such safeguard would be to initiate any such proceeding by an Order to Show Cause, as suggested by the government.

## **Conclusion**

For the foregoing reasons, the Court will grant the government's motion insofar as it suggests issuance of an Order ro Show Cause. All other settings previously imposed by the Court are vacated, and Mr. Zodrow will be directed by separate Order to show cause why he should not be held in criminal contempt or, in the alternative, sanctioned under the inherent authority of this Court. Based on Mr. Zodrow's response, the Court will enter any additional orders that are necessary and appropriate, which may as the government suggests, include certification to a United States District Judge.

Dated at Denver, Colorado, this 15th day of January, 2009.

BY THE COURT:

 s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge